No. 12518

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

EQUITY COOPERATIVE ASSOCIATION,

Plaintiff and Respondent,

-vs-

FRANK J. BILLMAYER,

Defendant and Appellant.

---

Appeal from:  District Court of the Twelfth Judicial District,
Honorable Thomas Dignan, Judge presiding.

Counsel of Record:

For Appellant:

Sias and Hendrickson, Chinook, Montana
Oscar Hendrickson argued, Chinook, Montana

For Respondent:

Morrison, Ettien and Barron, Havre, Montana
Robert Morrison argued, Havre, Montana

---

Submitted:  November 26, 1973

Decided: JAN 15 1974

Filed: JAN 15 1974

Thomas J. Kearney
_____
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant Frank J. Billmayer brings this appeal from a judgment of the district court of Blaine County, entered on a jury verdict in the amount of $1,440 in favor of plaintiff, Equity Cooperative Association.

The litigants entered into a written contract on September 25, 1970, which provided for the sale of 20,000 bushels of barley at the price of $1.40 per 100 pounds for 48 pound barley or better. The contract signed by Frank J. Billmayer as seller, and by Gerald McNutt as general manager and agent of Equity Cooperative Association as buyer, was on a printed form entitled "Contract of Sale". The delivery date and total dollar amount blanks of the contract were crossed out and not completed. Testimony of litigants indicated they understood the grain would be picked up by the buyer at the seller's ranch at such time and as soon as trucks became available to haul it, and payment would be made after physical transfer was completed and the grain weighed. Gerald McNutt stated this was the usual business practice of Equity Cooperative Association, but that payment could be made to the seller upon his request prior to pick up of the grain.

Defendant Billmayer testified that he had made no demand for payment on the contract, nor had provision been made to have the grain picked up on or by any certain date. In early November defendant sold the barley to another elevator company at a price more favorable to him than the price he had accepted from Equity Cooperative Association.

Plaintiff brought action for damages based on loss of commission profits from the grain purchase. Defendant's cross-claim for damages for the expense of hauling the grain to market was dismissed on plaintiff's motion.

The issue presented to this Court on appeal is whether the trial court erred in denying defendant's motions for a judgment notwithstanding the verdict and for a new trial. The controlling

issue is the precise time that title to the grain passed, i.e. at the time of the execution of the contract or at the time of delivery to the elevator.

The contract executed by the parties and received in evidence is clear and unambiguous on its face as a "Contract of Sale" and not a "Contract for Sale". Delivery was to be made by defendant and accepted by plaintiff at defendant's farm at a price certain for 100 pounds. Full settlement for total price contemplated market premiums or discounts and any advance payment.

Additionally, the testimony of defendant Billmayer established that he considered the grain sold upon his signing the contract of sale, and no further performance was required on his part. He stated he understood the problem of arranging for trucks to pick up the grain and agreed to the indefinite pick-up date. He stated he personally had requested two delays in the pick-up date of the grain during periods he was away from his ranch. Further, he never made any demand for payment or for pick-up of the grain, although he had contacted Gerald McNutt on different occasions concerning the pick-up. Nor had he otherwise notified Equity Cooperative Association prior to his sale of the grain early in November.

By reason of the foregoing we find substantial credible evidence to support the jury finding that title to the grain passed upon the execution of the contract of sale.

The judgment of the district court is affirmed.

_____
Justice

- 3 -

We Concur:

_James T. Harrison_
Chief Justice

_Nadie J. Haswell_

_____

_____

Justices.

. . . . . . . . . . . .

Mr. Justice Wesley Castles dissenting:

I dissent.

The majority opinion is strange.  The contract involved reads:

"CONTRACT OF SALE

"DUPLICATE-
"Harlem File Copy

"THIS AGREEMENT, entered into this 9-25,1970 between Frank Billmayer of Hogeland, Montana first party, and Equity Coop Assn of Harlem, Montana second party, WITNESSETH:

"That in consideration of the sum of $------, in hand paid by second party to first party, the receipt of which is hereby acknowledged, first party hereby sells and agrees to deliver to said second party at its elevator at Farm within ---- days of this date, the following described wheat, subject to reasonable dockage, to-wit:

"20,000 Bu. Bly a. 1.40 per 100# on Farm.
  (48# Bly or Better)

"It is agreed settlement for wheat shall be made by second party on the basis market preiums or discounts and the above amount of advance payment shall be de-deducted as a part of such full settlement.

"If first party has not made full delivery of said grain to second party, as above specified, said second party may at its option provide facilities for securing said delivery, and first party agrees to peaceably permit such delivery.  (This grain is being sold to arrive--therefore the necessity of immediate delivery.)

- 4 -

"First party warrants full title of said grain and that same is free and clear of all liens and encumbrances.

"It is understood and Agreed that this is a Contract of Sale, and not a Contract for Sale.

"In the presence of:      S/ Frank Billmayer
                                First Party and Seller
_____   S/ Equity Coop Assn.
                                Second Party and Purchaser

_____   S/ By:  Gerald C McNutt          "

The contract is for wheat -- yet it is for barley. The delivery date blank is drawn through -- yet it states "immediate delivery". The price is $1.40 per 100# on Farm---yet it provides settlement of wheat on the basis of "market premiums or discounts". It provides 48# barley or better.

The contract on its face is totally ambiguous, but the majority opinion states that "The controlling issue is the precise time that title to the grain passed * * *."

Interestingly the majority opinion says that "the contract * * * is clear and unambiguous * * *."

From the contract itself, there are clearly uncertainties. Unless the contract called for immediate delivery and payment, it is certainly uncertain as to the delivery date and date of payment. Either the contract is for barley (or wheat), for immediate delivery or an indefinite time; for immediate payment or settlement on the basis of market premiums or discounts; or, we leave these matters to the testimony of the parties.

The manager of plaintiff Equity Cooperative testified that the parties who were to pick up the barley were informed to do so as soon as possible, and they were to do it at the time the barley was sold. One Stewart, a trucker, was to pick it up. Stewart was to pay Equity $1.45 and Equity was to deduct five cents per hundred as its commission. It is this five cent commission that Equity is suing for. The resale of the barley to the trucker responsible for picking the barley up was testified to by the manager of Equity Cooperative Association.

The written agreement referred to the necessity of immediate delivery. There were no trucks operating in October. Defendant expected the grain, particularly that laying on the ground exposed to grazing cattle to be picked up and paid for in two weeks. Stewart, who was to pick it up, never did and there is no testimony that he ever picked up replacement grain or that Equity Cooperative ever lost a nickel because of it.

The verdict is simply not justified by the evidence. There is no substantial evidence to uphold it, and I would reverse.

Justice.

. . . . . . . . .

Mr. Justice John Conway Harrison:

I concur in the foregoing dissent of Justice Wesley Castles.

Justice

- 6 -